The next case for today is 2025-60188, Glenn A. Hardwick v. Federal Aviation Administration, et al. You may proceed. May it please the Court? Your Honor, my client and I, Glenn Hardwick, we're very appreciative that you are taking the time to listen to this interesting FAA case. In this situation, my client flew an aircraft with a tail number of N550ME to Wichita, Kansas. When the FAA ramp-checked the aircraft, they said it should have been N550MK. The reason why kilo is because the owner wanted to change the tail number to his initials. Okay, in the meantime, at the end, he got sanctioned 270-day suspension. And we feel that was excessive, and we'd like the Court to review this, for the simple reason that it was merely an administrative violation. There was no safety involved, nobody got injured, nobody got hurt. And for a pilot who has a full-time job as a pilot, 270 days would be quite excessive. How it all started, Glenn Hardwick, when he flew this aircraft, the day before he flew it, he went to the owner's hangar, and he fully inspected the plane. And he noticed that there was tape over the tail number, which changed it to N550ME. And he inquired about that. And the owner told him that he had to change it back to ME from MK, because he could not get an airworthiness certificate from the Houston FISDO, because there were some paperwork problems. And he said it was okay to fly, he said it was represented to him that it could fly as ME. So he gets up to, in the meantime, Glenn Hardwick checked the registration, and he saw that the registration equaled the tail number, ME. Then when he got up there, he got a ramp check by the FAA. And the FAA looked at all the documents, and they said, well, I see this assignment of special registration form, you should be flying this as MK. And Glenn Hardwick was like— And that's a short period of time here. This is like September to October, right? So it's— One day, one day. One day, okay. But, yeah. Yeah, he inspected the plane on the 14th and the 15th and went up to— 15th and went up to—on the 15th and went up to Wichita. That's correct. So when he got ramp checked, the FAA inspectors, Reagan and Allen, they noticed there was some tape on the aircraft tail number. And they removed the tape, and then they told Mr. Hardwick, well, you should be flying this as MK, and it's a violation because you don't have a certificate for MK or a registration. So Mr. Hardwick said, well, I was told that you could fly it as ME. So in the meantime, he got issued a white condition notice. The white condition notice did not state that it was a safety violation. Basically, it was an administrative violation because he didn't have an airworthiness certificate for MK, but he did for ME, bearing in mind that the aircraft is the same aircraft, same aircraft. It was just a technicality. It's a violation, though, isn't it? Yes, Your Honor, it is. But the inspector, Reagan, testified that it was an administrative violation versus a safety violation. Versus a safety violation. Versus a safety, not a safety, just an administrative violation. I'm sorry, go ahead. So you're going to get to a place where you're going to tell me an administrative violation shouldn't result in any kind of a penalty? No, I didn't say that. It should not be a harsh penalty for 270-day suspension. Where am I getting 150 days? This is 270, it's not 150? I'm sorry, it's 150. It's 150, I'm sorry. My error, my error. 150-day suspension, has it been reinstated since then? No, it's on hold pending the appeals process. But this has been going on almost six years. Yes, ma'am. So why has this been on hold pending the appeals? Wasn't he in all, I mean, for five years he could have been flying. No, he has been flying, but because it was not an emergency. It was just a suspension. If it's a suspension, you can still fly as long as you appeal. But if it's an emergency, you can't. So what is the point of the case at this point? We'd like to see that the sanction get reduced. But hasn't the sanction already happened? What would happen? You mean he hasn't lost the 150 days yet? Not yet. He hasn't served off from 150 days yet? Not yet, Your Honor. He's going to struggle it out until he retires. He's still flying, Your Honor. But we feel it was excessive. And I'd like to give you an example. If you go to the FAA. These tail numbers, they are important. And the pilots know that. Correct. It's not casual. You want to change the name to a slight initial. So your initial will look. The number will coincide with my name initials. Okay. A little vanity exercise. Okay. But what you're talking about here is not a deal of technicality of numbers and whatever. And he knew that. And he flew. And he flew further and made a trip that he didn't need. He went ahead and kept flying it before it got changed. And that in and of itself is a serious problem in terms of a regulation. Well, Your Honor, he only flew it for up to Wichita and back. That was it. He was only a pilot for one day on that aircraft. What flight did he take? He flew from Palin to Wichita and then back to Palin. Okay. As you look at it from the standpoint of putting the context of this regulatory scheme, if you're not aware of aircraft and the way they operate, and the designation, one might suppose this is hyper-technical. But it isn't because of the—you agree with that, I assume. Oh, I agree, Your Honor. I agree. But I think in this case— Yeah. And then the other thing is, if I may say, when he was up in Wichita, before he flew back, he went on the FAA website. And the FAA website said that 550ME was active and 550MK was a deregistered aircraft. And so he was under the impression. Then he called the owner. He thought it was a mistake by the— He flew the plane on September the 3rd, 2019, after the new registration took effect on Bay A8. That's right. You mean the—you mean you were under the MK? I'm sorry. The—it was an outage to the fact that Breeze flew the plane and it still had the tail number, the MK. Oh, I'm sorry, Your Honor. You're right. Scott Breeze flew the plane prior. Right. And it had MK. And when he was—when he landed, the FAA examiner—the FAA inspector said, you should be flying it as ME. And then my guy flew it as ME. Then when he gets to Kansas, he should be flying it as MK. But there's a difference between September and then in October. October, yeah, 30 days, yes. All the stuff happened in September to October. And so it was changing quickly of what it should be called during that time. Just one month, yeah. And my guy only flew it for one day. Yeah. Well, you know this is a substantial evidence standard, and pretty much your client admits that he did violate. Well, because—well, he thought he did not. But, Your Honor, if you look at the— But under the—I mean, substantial evidence can be supported here on this record, can't it? Just that—based on the record, yes, yes. Okay. Then the next point is then can we say that the punishment is wrong and that it would have to be—you know, what would be the standard by which we would review the punishment? Okay. I looked at the FAA penalty and— It would have to be arbitrary and capricious, wouldn't it? Well, I think so, Your Honor, if I can explain. Okay. If you have three classes, severity level one, level two, and level three, if it's careless, you have a low, then moderate, then high. If it's reckless, then you start off with moderate, then high, and maximum. Now, operation with an invalid registration is considered a severity one offense, and that's what it is. I agree. However, with the airworthiness certificate, when I look at the reg, there is three possibilities. Severity three is the worst one. It says likely effect on safety. There's no effect on safety here because he wasn't cited for that. The white slip did not say it was a safety violation, nor is it a severity two where it says a potential effect on safety. However, I would agree it would be a severity one, and that's technical noncompliance. So, Your Honor, what I'm trying to say here is the sanction of 150 days is excessive. But if you look at the severities and you look at the circumstances, I believe that the sanction should be no more than 30 to 60 days. Tell me where you're getting these numbers. From the sanction range table. Is that what the regulation says? It shouldn't be more than 30 to 60 days? Okay. If it says, if it's low, if it's a low issue, low being not, low being, low is level one. Anything level one is 20 to 60 days. And when it's moderate, it's 60 to 120. And they gave you for the first flight the number one, the low 60 days. They gave you the 60 days, which is what you said it should be for the first flight. Well, it's 20 to 60, okay. Well, they gave you the 60. I mean, we're not going to find arbitrary and capricious because they did the high end in the same range that you think is applicable. I understand. So they gave you that, the 60 days, severity one, for the first flight. But it's the second flight they gave level severity number two. And that was because he knew better at that time, so it wasn't just careless or reckless. So they made it 90 days under the level two because it wasn't just at the last second he didn't know like it had been on the first flight. So why is that arbitrary and capricious, and what case would say that? Because based on the facts and circumstances and all the issues here, I just thought severity two. It seems like the FAA just pulled the severity two. I think it should have been a severity one. Well, then he would have 120 days instead of 140 days. Well, it's arranged. They could make it less. Why would they make it less for the second time you do it than for the first time? Based on the circumstances, John. Okay. Did you have a case that supports this argument? No. Do you have anything else you want to argue? No, Your Honor. Does anybody have any questions? Thank you. We have your argument, sir. Thank you very much. Good morning, and may it please the Court. My name is Trent Ravish, and I am representing the FAA in this matter. Given Petitioner's argument and his concession that there is substantial evidence for the violations at issue, I can answer any questions Your Honors may have about sanction, but other than that, we will just rest on our briefs, if none. Do you think it did seem a little ticky-tack at some point, or is it very, very important, and you should not have done this? Right. So one point the opposing counsel made was that it wasn't a safety issue, and ultimately we fervently, fervently disagree. Everything that the FAA does is in the interest of safety, as it's been charged to by Congress. There was no imminent threat of safety. There was no imminent safety hazard here. The condition notice makes that clear. We don't contest that. But it does go to, the conduct at issue here does go to sort of broader, more like big-picture concerns about safety. So one, a noncompliant approach to piloting is just simply unacceptable. A noncompliant what? A noncompliant approach to piloting is unacceptable. The FAA depends on pilots to comply, or at least try to comply with its regulations. Two, we must know what an aircraft's true identity is. Knowing an aircraft's owner, history, repairs, alterations, if any, are essential to aviation safety. This wasn't an attempt, though, to hide. Nobody was hiding or, like, this wasn't done in any sort of covert manner to pretend it was a different plane. It was just a silly name change to be a vanity name change, basically, by the owner. That's correct. But ultimately, at the end of the day, the onus is on the pilot to ensure himself that the aircraft is properly registered and that there are no discrepancies with the airworthiness certificate. What the aircraft's registration is must match what the airworthiness certification is. And the reason we put that onus on the pilot is that he's the final safeguard for the public's safety. And so I, unless your honors have additional questions, I think we'll stand on our graves. So how did they arrive at the, I understand it's a bit of a steady reprimand or some kind of fine, but this one was a pretty hefty fine of these facts. Of course, how do you arrive at this punishment? Right, so the FAA's punishment here is solely and exclusively within its policy. We assess sanctions for violating acts instead of compounding regulatory violations. I understand that you do that, but what kind of metric is it? You just lean back and say, gee whiz, I think that's going to throw up a number. I mean, do you have any sense of proportion to it? So we have within our sanction guidance, it's Chapter 9, 2150. It's at ECF 23, starting at page 25. It's a compilation of all of our sanction policy, the severity, and ultimately how we come to our sanction calculation. It's not, you know, there's a fully fleshed out process that I can walk you all through. But at the end of the day, we have very long established thought out processes for coming to these sanction calculations. I'm prepared to hear you walk me through it. Okay. So the first step in 2150 is to go to figures. Because all we're asking is how you got to the 150. Right, right. So you start out and you go to the table of violations in the back. Here there was on ECF 23, page 53, figure 99J, section 3, operation of an aircraft with an invalid, suspended, or revoked registration. That's severity 1. Violation figure 99B at ECF 23, page 25. If you go to section 19, operation when an airworthiness certificate has not been issued, that's considered a severity 2 violation. Right, as I mentioned, the FAA doesn't assess penalties for violations. They assess penalties for acts here. Each flight is considered a single act. We apply the severity level for the more serious violation because that's the most proportional in our opinion. They're in our policy. So once you have a severity 1 and a severity 2 violation, you apply the severity 2 violation because it's more severe. You then go to the figure 1 sanction matrix. This is ECF 23, page 28. You characterize. So if entity change from the—one letter change by a pilot that's just frequently flying, as this one was, that's a pretty hefty penalty for that kind of a violation. So it's actually—under the sanction calculation, it is actually the lowest possible range of the sanction. It wasn't the pilot who was trying to make the change. It was the owner of the aircraft. And as I mentioned, ultimately, it's the pilot who's the final safeguard and has to assure himself of the aircraft's proper registration. I didn't hear the last thing you said. Ultimately, under the regulations and NTSB precedent, the pilot has an independent duty to assure himself that the aircraft is properly registered before he operates it. Okay. Does anybody have anything? No. Okay. I think we have your argument, sir. Thank you. We respectfully request the court to deny the petition for review. Thank you. Your Honor, just two points. When he received the white condition notice, the condition notice says the finding was the aircraft does not have the correct registration number in accordance with 14 CFR 4521 and that the finding is not considered to be an imminent hazard to safety. So based on the totality of the circumstances, I believe the sanction should be reduced to a severity one. There's no doubt you've got to get sanctioned for something, but I think a one and a two is just too excessive to have your license pulled when you're a professional pilot. What should it have been? I'm thinking based on all the – and also, Your Honor, the fact that he did a due diligence. He actually saw the ME change, and he even inquired, and he was told this, and he believed it. So he relied on the owner of the aircraft. I think considering all the circumstances, I don't think his – I would think he should be sanctioned no more than 90 days, no more than 90 versus 150. 150 is excessive, Your Honor. Thank you very much. Thank you, Your Honor. Pleasure. On the facts of this case, all things considered, that fines in excess of 90 days would be excessive. Well, when you compare it to 150, it's not. But anyway, thank you, Your Honor. Appreciate it. Thank you.